UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ALVIN HENIX,

      Plaintiff                          Civil Action No. 05-71604

v.                                      HON.   LAWRENCE P. ZATKOFF
                                        U.S. District Judge
                                        HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL                  U.S. Magistrate Judge
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Alvin Henix brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner terminating his Disability Insurance Benefits (DIB), after finding that his disability ceased as of July 21, 2000 (Tr. 33).  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

## PROCEDURAL HISTORY

Plaintiff filed an application for DIB on January 29, 1991 (Tr. 13).  On January 24, 1992, Administrative Law Judge (ALJ) Roshak found him disabled due to degenerative disc

-1-

disease of the cervical and lumbar spine status post lumbar laminectomy and L4-L5 disc removal; arachnoiditis and right shoulder impingement syndrome; and cervical radiculopathy (Tr 25-27). A 1996 medical review showed that Plaintiff had not experienced medical improvement (Tr.13). However, a subsequent evaluation of Plaintiff's condition indicated that he was no longer disabled as of July, 2000 (Tr. 52). Plaintiff filed a request for an administrative hearing, conducted on November 13, 2002 in Flint, Michigan before ALJ William J. Musseman. Plaintiff, represented by attorney Richard J. Doud, testified (Tr. 198-211), as did Vocational Expert (VE) Pauline McEachin (Tr. 212-219). On February 12, 2003, ALJ Musseman found that although Plaintiff was unable to perform any of his past relevant work, he retained the capacity to perform a significant range of light work (Tr. 19). On March 11, 2005, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on April 25, 2005.

## BACKGROUND FACTS

Plaintiff, born January 15, 1952 was age 51 when the ALJ issued his decision (Tr. 19, 198). He completed twelfth grade and worked previously as a security guard (Tr. 68, 199). Plaintiff alleges continued disability due to complications from a ruptured disc and right leg pain (Tr. 58).

### A.    Plaintiff's Testimony

Plaintiff, a right-handed high school graduate, testified that he lived in Saginaw, Michigan (Tr. 198-199). He reported that he stood 5' 8" and generally weighed between 218 and 223 pounds (Tr. 199). He indicated that he had only a limited ability to read and write,

adding that he encountered difficulty reading longer words (Tr. 200). He testified that in 1999, financial difficulties obliged him to work approximately fifteen hours a week as a security guard, opining that he would be unable to perform such work full-time, due to problems walking and with shoulder pain (Tr. 201-203). He reported that he had performed production work in the early 1990s, adding that his production job did not require him to lift more than twenty pounds, twist, turn, or bend, due to a physician imposed restrictions (Tr. 203).

Plaintiff stated that in addition to longstanding back, shoulder, and leg problems, his physician diagnosed him with arthritis which created neck and hand stiffness (Tr. 204). He indicated that his physician told him that surgery would not help his neck problems, adding that injections had not relieved his neck pain (Tr. 208). He assessed his shoulder pain on a scale of one to ten as a "ten" (Tr. 206). He reported additionally that he suffered from constant headaches and left knee pain[1] (Tr. 204).

Plaintiff testified that pain and medication side effects obliged him to nap for approximately three hours each day (Tr. 209). He testified that he cared for his grooming needs, but that his son grocery shopped and performed yard work for him (Tr. 210). He estimated that he could walk for up to half a block; sit or stand for up to ten minutes at a time; and lift up to twenty pounds without difficulty (Tr. 211). He stated that he retained a driver's license and made short trips to Bible study and church (Tr. 211).

_____

[1]Plaintiff testified a few moments later that it was his right, rather than left knee that created discomfort (Tr. 208).

### B.    Medical Evidence

### 1.  Material Submitted Prior to the Administrative Decision

In February, 1999, Plaintiff told Kevin Robinson, M.D. that he did "not have any complaints" (Tr. 139). Dr. Robinson observed that Plaintiff's "[p]assive range of motion does not cause any discomfort" (Tr. 139). He refilled Plaintiff's Tylenol #3 prescription (Tr. 139). In April, 1999, Dr. Robinson recorded that Plaintiff experienced improved shoulder function to the extent that he could exercise with light weights, but noted further that Plaintiff now complained of neck and headaches (Tr. 140). A May, 1999 examination referenced a recently performed MRI which showed "persistent disc bulging of C5-C6 and C6-C7" (Tr. 141-142). Plaintiff indicated that he wished to undergo cervical spine fusion (Tr. 141). Dr. Robinson referred him to E. Malcom Field, M.D. for an evaluation (Tr. 141). He noted the same month that Plaintiff did not exhibit any weakness in the upper extremity (Tr. 144).

In June, 2000, S. Sankaren, M.D. examined Plaintiff on behalf of Disability Determination Services (DDS) (Tr. 102-108). He determined that Plaintiff's back condition was "much better" subsequent to disc surgery, noting that Plaintiff could walk up to three blocks on a good day (Tr. 102). Plaintiff reported that he attended physical therapy twice a week for continued shoulder pain, and took blood pressure medication daily along with Tylenol #4 on a daily or twice daily basis (Tr. 103). Dr. Sankaren concluded that Plaintiff's hypertension was well controlled with medication, but that he experienced a decreased range of motion of the right shoulder due to a rotator cuff injury (Tr. 104).

In December, 1999, Dr. Field, M.D. examined Plaintiff following fusion surgery (Tr.

-4-

157). Plaintiff reported good results, indicating that he wished to go back to his security work (Tr. 157). At a followup examination the next month, Plaintiff complained of shoulder pain (Tr. 160). Dr. Field opined that Plaintiff was healing satisfactorily (Tr. 160). In response to Plaintiff's continued complaints of shoulder pain, Dr. Field prescribed physical therapy in November, 2001 (Tr. 161). An MRI performed one year later showed moderate spinal stenosis at C6-C7 and minimal stenosis at C4-C5 (Tr. 181).

A Residual Functional Capacity Assessment performed by John Bartone, M.D. in July, 2000 found that Plaintiff retained the ability to lift twenty pounds occasionally; lift ten pounds frequently; stand for approximately six hours in an eight-hour work day; and sit for approximately six hours, as well as an unlimited ability to push or pull (Tr. 125). Dr. Bartone noted that Plaintiff's records did not contain evidence of motor or sensory deficits; atrophy; or indications that he required a walking aid (Tr. 125). The report restricted Plaintiff from ladder climbing but contained no other postural limitations (Tr. 126). Manipulative deficiencies were confined to a limitation on reaching (Tr. 127). Dr. Bartone commented that Plaintiff's overall condition appeared improved (Tr. 123).

In January, 2003 Mark S. Adams, M.D., summarizing Plaintiff's condition to Dr. Robinson, characterized his neck and right shoulder pain as "incapacitating"(Tr. 183). Dr. Adams stated that Plaintiff had also experienced hand swelling and numbness, with reflexes "present but weak" in both arms (Tr. 183).

### 2. Material Submitted Subsequent to the Administrative Decision[2]

In February, 2003 Daniel Duffy, D.O. found upon examination that Plaintiff appeared younger than his stated age, exhibiting "excellent muscular development bilaterally with well-developed shoulders, upper back, and triceps, and brachioradialis," adding that he did not see any asymmetry "from side to side" (Tr. 188). He noted electrodiagnostic evidence of a mild right cervical C5-C6 radiculopathy, suggesting "some nerve root dysfunction" (Tr. 180).

In September, 2003, Dr. Robinson reexamined Plaintiff, suggesting in response to continued complaints of bilateral shoulder pain that he undergo cortisone injections (Tr. 191). Dr. Robinson noted that Plaintiff demonstrated "no significant weakness of the rotator cuff" (Tr. 191). Dr. Robinson's notes from a March, 2004 examination indicate that Plaintiff received injections for impingement syndrome of the the left shoulder (Tr. 193). Left shoulder imaging performed in April, 2004 showed normal results (Tr. 194).

### C. Vocational Expert Testimony

VE Pauline McEachin placed Plaintiff's former work as a security guard at the sedentary level of exertion and his production work at the light level of exertion, classifying

---

[2] Pursuant to *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993), material submitted to the Appeals Council subsequent to the administrative decision cannot be considered by the Court. In *Cotton*, the court held that where the Appeals Council denies a claimant's a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.,* 2 F.3d at 695-96.

both jobs as unskilled  (Tr. 174, 214).  The ALJ   then posed the following question to the

VE:

> "Let's assume an individual the same age and education background as the
> claimant, limited to an exertional level and a full range of light with non-
> exertional limitations of no repetitive bending, squatting, kneeling, crawling,
> climbing, twisting or turning, no over chest level work, no below waist level
> work, no push/pull, no repetitive extended arm reaching, no report type writing
> . . . no requirement of physical contact with other persons, no repetitive turning
> or flexation of the neck.  Would an individual with these limitations be able to
> do the past work of the claimant?"

(Tr. 215).  The VE stated that given the above limitations, Plaintiff could perform his past

work as a security guard (Tr. 216).  In addition, she testified that Plaintiff could perform the

work of a video surveillance monitor (2,000  jobs), visual inspector (2,200 jobs), and

information clerk (1,700 jobs)  The VE testified that her conclusions were consistent with

the information found in the Dictionary of Occupational Titles (DOT) (Tr. 216).  She

testified further that her job numbers which took into consideration Plaintiff's exertional and

non-exertional limitations were drawn in part from *Labor Statistics Quarterly* and

*Employment Statistics Quarterly* (Tr. 219).   The VE  stated that the need to lie down two or

three times during the day  would be incompatible with competitive employment (Tr. 216).

### D.     The ALJ's Decision

ALJ Musseman held that Plaintiff's disability ceased on July 1, 2000 (Tr. 19).  He

found that Plaintiff's work as a security guard, performed part-time after the onset of

disability, could not be considered past relevant work (Tr. 15).  Citing Plaintiff's medical records, he found that Plaintiff experienced disorders of the lumbar spine, cervical spine, right shoulder, and left knee (Tr. 18).  The ALJ held that these impairments were considered severe based on the requirements of 20 C.F.R. § 404.1521, but found that they did not meet or medically equal one of the impairments found in Part 404 Appendix 1 Subpart P, Regulations No. 4, noting that Plaintiff currently saw his physicians on an "as needed" basis and that "no more aggressive treatment is planned" (Tr. 16).

 The ALJ found that while Plaintiff was unable to perform his past work, he retained the  residual functional capacity (RFC)

> "to lift ten pounds frequently and twenty pounds occasionally and to sit, stand and walk up to six hours each during an eight-hour workday.  Over chest level work or below waist level work.[3]  The claimant cannot push or pull, perform repetitive extended arm reaching or repetitive turning or flexing of the neck.  He is unable to write reports.  He cannot have physical contact with others"

(Tr. 19).

He concluded that although Plaintiff's exertional and non-exertional limitations prevented him from performing a full range of light work, Plaintiff could perform a significant number of jobs in the national economy, including work as an video surveillance monitor, (2,000 jobs), visual inspector  (2,200 jobs), and information clerk (1,700 jobs) (Tr. 18).   The ALJ found Plaintiff's  allegations of disability "not totally credible," noting that his daily activities and medical records indicated that he was capable of gainful employment

---

[3]The entire RFC is quoted verbatim from the ALJ's opinion.

(Tr. 16, 18, 165-167).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

-9-

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### The Vocational Expert's Testimony

Plaintiff premises his argument for remand on the VE's findings, which concluded that he could perform the jobs of a surveillance-system monitor, inspector, and information clerk.  *Plaintiff's Brief* at 8.  Plaintiff, 51 at the time of the decision,  argues that each of the three jobs cited requires only a sedentary level of exertion, thus pursuant to Medical-Vocation Rule 201.12, a finding of disabled is directed  because he is closely approaching advanced age.  *Id.*

20 CFR § 404.1563 (d) states, "If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work

experience may seriously affect your ability to adjust to other work." A finding that a claimant closely approaching advanced age with skills analogous to Plaintiff's could perform only sedentary work would generally direct a finding of disabled. "The 'grid,' Pt. 404, Subpt. P, App. 2, directs a finding of disabled if plaintiff had a residual functional capacity (RFC) for sedentary work, § 201.09, but not if his RFC is light, § 202.10." *Davis v. Secretary of Health and Human Services* 634 F.Supp. 174, 177 (E.D.Mich.,1986).

Pursuant to 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.12, Plaintiff notes correctly that due to his age, if he were limited to sedentary work, he would be deemed disabled under the Grids. However, Plaintiff bases that claim on the false premise that the VE's job findings include only sedentary work. In fact, only one of the three jobs cited by the VE - that of surveillance-system monitor - requires only a sedentary level of exertion[4] (Tr. 216). The job title of "inspector," also cited by the VE, includes over 100 subheadings in DOT - most of which require a light exertional level.[5] Moreover, the Court finds no reason to question the VE's finding that the number of visual inspector positions (2,200) has been appropriately reduced to account for Plaintiff's limitations (Tr. 216). Likewise, the VE's finding that Plaintiff could perform the work of an information clerk - a job title which encompasses

---

[4]DOT 379.367-010.

[5]Plaintiff attempts to demonstrate that the VE cited only sedentary positions by stating that a Dowel Inspector's position requires only sedentary exertion. *Plaintiff's Brief* at 8. However, this Court conducted a complete survey of the hundreds of inspector positions listed in the DOT, only to find that the vast majority require a *light* level of exertion. Thus, Plaintiff's argument, based on an isolated example of a sedentary inspector position representing a small minority of the total positions, is misleading.

-11-

positions at both the light and sedentary levels– appears to have been tailored to Plaintiff's exertional and nonexertional limitations.[6]

On a related note, Plaintiff also maintains that the ALJ's decision, which at one point states that he was capable of a limited range of *sedentary* work, rather than *light* work (Tr. 19, ¶12), supports his argument that he can perform only sedentary work. However, the ALJ's comment reflects a misstatement which stands at odds with the rest of his findings regarding Plaintiff's capacity to perform light work. Paragraph 9 at the top of the same page as the misstatement contains an RFC for a limited range of *light* work (Tr. 19). Likewise, paragraph 11 states that Plaintiff retains "the residual functional capacity to perform a significant range of *light* work" (Tr. 19). The ALJ's decision, supported to the extent that the Court can "trace the path of his reasoning," should not be rejected on the basis of one misstatement. *Lowery v. Commissioner, Social Sec. Administration,* 55 Fed.Appx. 333, 339, 2003 WL 236419, 5 (6th Cir. 2003) (*quoting Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir.1995))[7]

This record as a whole points overwhelmingly to a finding of non-disability, and the

---

[6]Two of the five information clerk positions listed in the DOT require work at the light exertional level.

[7]

Plaintiff also criticizes the ALJ's use of Medical-Vocational Rules 202.20 and 202.13 as a framework for decision-making, arguing that the rules pertaining to *light* work were inappropriately applied. *Brief* at 8. However, the ALJ properly used the VE to ascertain the range of light work available to Plaintiff. Pursuant to SSR 82-12, when a claimant's exertional limitation falls between two grid rules, the ALJ determines his occupational base by consulting a VE to determine whether he can perform substantial gainful work in the economy.

ALJ's decision is therefore supported by substantial evidence.  If this Court were to remand this case for rehearing, Plaintiff would at most receive an opinion which changes the word "sedentary," now stated in paragraph 12 of the findings, to "light."  "[W]here remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 547 (6th Cir. 2004); *citing NLRB v. Wyman-Gordon,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)(plurality opinion).

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be  GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

Any objections to this  Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: March 13, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 13, 2006.


s/Susan Jefferson
Case Manager